IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2012

## RANDY MARAY CHEAIRS, JR. v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hardeman County**
**No. 09-01-0820    J. Weber McCraw, Judge**

**No. W2011-01293-CCA-R3-PC  - Filed December 4, 2012**

The Petitioner, Randy Maray Cheairs, appeals the denial of post-conviction relief from his convictions of second-degree murder, especially aggravated robbery, especially aggravated burglary, and possession of a handgun in the commission of a felony for which he received an effective forty-year sentence. In this appeal, he contends that he received the ineffective assistance of counsel and that his guilty pleas were not knowing and voluntary. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Lisa M. Miller, Selmer Tennessee, for the Petitioner-Appellant, Randy Maray Cheairs

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe Van Dyke, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was indicted for first degree felony murder, especially aggravated robbery, especially aggravated burglary, and possession of a handgun in the commission of a felony.[1] Pursuant to a plea agreement, on September 11, 2009, the Petitioner entered guilty pleas to second degree murder, a Class A felony, especially aggravated burglary, a Class B felony, and possession of a handgun in the commission of a felony, a Class D felony. He

---

[1]Neither the indictments or the judgments in this case are included in the record on appeal. We glean this information from the guilty plea colloquy.

was sentenced to twenty-five, twelve, and three years, respectively, for an effective forty-year sentence. This sentence was to be served consecutively to another unrelated sentence. The charge of especially aggravated robbery was dismissed. There was no direct appeal filed. On August 30, 2010, the Petitioner, acting pro se, filed a petition for post-conviction relief. Counsel was appointed and an amended petition was apparently filed.[2] On May 2, 2011, the trial court conducted a hearing at which the Petitioner and trial counsel testified. By written order on May 10, 2011, the trial court denied relief. This timely appeal followed.

## FACTUAL BACKGROUND

At the guilty plea colloquy, the Petitioner stipulated to the following factual basis in support of his guilty pleas:

> Your Honor, had this matter gone to trial, the State would have introduced proof that on or about the 7th day of January of 2009, officers of the Hardeman County Sheriff's Department responded to a 9-1-1 call from Grand Junction wherein the caller had stated that André Smith had been shot at his residence at 160 Smith Road in Grand Junction there in Hardeman County. When the officers arrived on the scene, Mr. Smith had been taken by family members toward Bolivar in an attempt to meet the ambulance to get him to the hospital more expeditiously.

> Prior to Mr. Smith reaching the hospital, he did expire, died en route. His body was subsequently taken to the medical examiner's office. It was shown that he was - the cause of death was a gunshot wound that entered his left arm in a down and back trajectory, piercing lung, liver, stomach and intestines.

> T.B.I. was called in to investigate. That was Agent Parker along with a crime scene team that was brought in. They worked the scene of the home gathering evidence, among that evidence being roughly six cartridge cases and some expended rounds also found in the house. Those pieces of evidence were taken and submitted to the T.B.I. Crime Lab also.

> On or about the 13th of January, Agent Parker received a phone call from Mr. Lane Teague, [a] teacher at Middleton High School, that said one of his former students had come to him to discuss the shooting of André Smith.

---

[2]No amended petition is included in the record on appeal.

An interview was set up with [the Petitioner] . . . . In the statement given to the T.B.I. agents, [the Petitioner] admitted his involvement along with another principal, Jeffrey Talley, who has already entered a plea before this Court. In that statement, [the Petitioner] did admit his involvement in this. However, at that point in time, both Mr. Talley and [the Petitioner] . . . seemed to think that the fatal round had been fired from Mr. Talley's gun. Both of the parties, Mr. Talley and [the Petitioner], admitted that the gun that [the Petitioner] was using when he went into the home was a .45 caliber Para-Ordnance, semi-automatic handgun.

On the night that this happened, Mr. Smith, along with some other individuals, were throwing dice in Mr. Smith's home. [The Petitioner] and Mr. Talley went in with masks and handguns and began firing rounds. Mr. Smith fell to the ground - or to the floor, being shot. A brief search was made for a roll of money that was supposedly hidden in a sock. Mr. Talley had told [the Petitioner] he thought it was somewhere between ten and fifteen thousand dollars. They did not locate that money and left in the victim's car. The search by the crime lab investigative team did turn up that sock of money. It was roughly $3,000.000. Again, the ballistics showed that the slug that killed the victim in this matter, Mr. Smith, was fired from the Para-Ordnance .45 that both Mr. Talley and [the Petitioner] said that [the Petitioner] had that evening.

After trial counsel stipulated to the above factual basis for the guilty pleas, she advised the court that she had represented the Petitioner from the arraignment of his cases, or "within 24 hours after [the Petitioner] gave his statement [to the police]." Prior to a ballistic report that confirmed the bullet that struck and killed the victim came from the Petitioner's gun, counsel believed that they would be "fighting for facilitation." However, after the report, she advised the Petitioner "that if we proceeded to trial under the Tennessee Felony Murder Statute, his participation in the events that occurred at [offense location] would certainly rise to meet the elements of the crime of felony murder."

Counsel also alluded to the motion to suppress, which the trial court heard and denied the day before the guilty plea. In regard to the motion to suppress the Petitioner's statement, counsel stated the following: (1) the Agent's testimony was very thorough; (2) the Petitioner drove himself to the location of the interview; (3) the Petitioner voluntarily participated in the interview with the Agents; (4) the Petitioner was advised and waived his rights under Miranda; and (5) [the Petitioner's] statement "would have been the best evidence against us at trial, the statements made from [the Petitioner's] own mouth, voluntarily to the agent prior to counsel, prior to even being in custody[.]"

Counsel also confirmed that the Petitioner cooperated with law enforcement by providing them information to recover weapons as well as information, which was confirmed by DNA results, regarding "the . . . hoodie sweatshirt . . . the steering wheel of [the victim's] car, [and] the footprints and shoes found by the car[.]" She believed the Petitioner's cooperation "turned the events [in the case] early this morning[.]" Counsel initially "foresaw this matter proceeding to trial on Monday," and stated that she had interviewed as many witnesses listed on the indictment "as would talk with us." She had reviewed "voluminous documentation over numerous periods of times." She also stated that the Petitioner had "somewhat of a learning disability, was evaluated and found competent and sane and able to participate in the defense of his case." She included the Petitioner's family in their discussions given the Petitioner's learning disability. Finally, counsel stated, "I feel comfortable that this is what is best for my client and he does this this afternoon with my recommendation but also when I tendered it to him this morning it was almost his immediate desire to ask the Court to take this plea."

The Petitioner affirmed his understanding of the charges against him and their penalty ranges as well as the charges to which he was pleading and their penalty ranges. He stated that he understood that he did not have to plead guilty, that he had the right to trial, and that a trial was scheduled for the following Monday. He acknowledged that if he went to trial and were found not guilty, he would be free of the charges. However, if he were found to be guilty, he could appeal. He understood that if he decided to go to trial, he would have the right to question, challenge and confront witnesses and would have the right not to incriminate himself. He understood that by entering the guilty plea he would be "giving up very valuable constitutional rights." He acknowledged that he had signed the plea agreement, that he understood what he was signing and that his lawyer had been available to answer any questions he had as he reviewed the agreement. He agreed that he had initialed changes that were made to the agreement, had an opportunity to discuss those changes with his lawyer, and had understood what he had "been doing all the way through this process."

The court read the parties' agreed upon sentence and asked the Petitioner if "those [were] the things that [he] agreed to." The Petitioner replied that they were and, when asked by the court, responded that he did not have any questions.

At the post-conviction hearing, the Petitioner and trial counsel were the only witnesses to testify. The transcript of the plea hearing was admitted into evidence but the plea agreement, indictment, presentence report, and sentencing order were not and do not appear in the record on appeal.

The Petitioner testified that counsel did not talk to him about his presentence report or any mitigating factors, and he did not know counsel had waived the report at the plea

hearing. He stated that counsel did not tell him that it was not possible for him to be charged with especially aggravated burglary and murder under Tennessee Code Annotated Section 39-14-404(d). He also said counsel did not discuss with him any defenses to the murder charge. The Petitioner complained that counsel "kept on mentioning the [fifty-one year]" sentence that attached to a felony murder conviction, and he said that she spoke to him as if she found no reason to go to trial. He testified that he accepted the plea because of his fear of serving fifty-one years if convicted at trial of felony murder.

The Petitioner testified that he gave a statement to Investigator Joy without counsel present. He told Investigator Joy that he wanted his counsel present and Joy told him he was trying to reach her. However, counsel never appeared. The Petitioner informed counsel that he wore the black hoodie on the night of the crime until his co-defendant asked for it. The co-defendant put on the hoodie before the crime was committed.

The Petitioner agreed that trial counsel filed discovery motions, obtained the State's evidence, and discussed the evidence with him. He acknowledged that counsel told him "exactly what the witnesses said to her when she talked to them." He believed she had adequately prepared for trial, had subpoenaed enough witnesses, and had "effectively told [him] the other options that [he] had" and explained those options to him. The Petitioner believed he "had a choice in the matter, to take the plea or go to trial." He denied feeling pressure to accept the plea agreement. The Petitioner acknowledged that counsel read the plea agreement to him and explained each part.

The Petitioner acknowledged that he refused the State's first two plea offers. The first offer dropped all charges except the felony murder, which would be served as a life sentence. The Petitioner was advised that a life sentence meant a minimum of fifty-one years. The second offer reduced the felony murder to second degree murder with twenty years at one hundred percent, twenty years at one hundred percent for the especially aggravated robbery charge, and dismissed the especially aggravated burglary and possession of a firearm. The sentences were to be served consecutively for an effective sentence of forty years. The third offer reduced felony murder to second degree murder with twenty-five years at one hundred percent, twelve years at thirty percent for especially aggravated burglary and three years at one hundred percent for possession of a handgun in the commission of a felony. The especially aggravated robbery charge was dismissed. The third offer was an effective sentence of forty years, but unlike the second offer, it reduced service of the especially aggravated burglary to thirty percent.

Trial counsel, a Senior Assistant District Public Defender, had been a public defender for over twenty years. She had participated in twenty-five murder trials as either lead counsel or co-counsel and some death penalty cases. Counsel had viewed the crime scene twice and

had spoken to "as many witnesses listed on the indictment as would cooperate with us and talk with us." She discussed defenses to murder with the Petitioner but found no witnesses to help with that defense.

Discovery revealed the victim's neighbor, Mr. Marshall, had given police a statement that he witnessed two people with masks and dark clothing approach the victim's house and fire a gun into the kitchen. Mr. Marshall gave the police the names of two individuals whom he believed the masked gunmen to be, and these names did not include the Petitioner's name. Counsel testified that she attempted to interview Mr. Marshall and had a subpoena for him. However, Mr. Marshall responded by hiring an attorney, who did not allow counsel to speak with Mr. Marshall.

Counsel said neither she nor her office was contacted at the time Investigator Joy interviewed the Petitioner. Though she was out of town that day, she was available by phone, and others in her office would have met with the Petitioner. As mentioned previously, counsel confirmed that she filed a motion to suppress all of the Petitioner's statements.

The parties all thought that the Petitioner's co-defendant had fired the fatal shot until the ballistics report was returned. Therefore, counsel had discussed lesser included charges with Petitioner and had hoped to reduce the felony murder charge to facilitation. However, after the ballistics report indicated Petitioner's bullet caused the victim's death, counsel and the Petitioner "were very disheartened." The State "would not move off of a felony murder offer," and counsel aspired to "argue it down to a second degree. I mean, that was kind of our goal, was at trial if we could get second degree, we would - that would be a win." Counsel testified that because the Petitioner had confessed his intent to rob the victim and the ballistics report indicated his bullet caused the victim's death, "I did not feel like the State would have much problem in carrying their burden on felony murder."

The State offered its third plea agreement the day after the trial court denied the Petitioner's motion to suppress his statements. Counsel testified that she read the plea agreement aloud to the Petitioner, explained its terms, and involved his family in their discussions. The Petitioner chose to accept the plea, which counsel believed to be in his best interests.

In its written order, the post-conviction court determined that the Petitioner "knowingly and voluntarily entered a plea, that petitioner actually understood the significance and consequences of the plea and sentence." The Court found that the Petitioner "was not coerced into entering a plea." It credited the testimony of trial counsel and found that she had "provided adequate assistance" and that the Petitioner "failed to show any

deficient performance by [trial counsel] or that he was prejudiced." The court concluded that the evidence against the Petitioner was "overwhelming" and that trial counsel "negotiated the best deal possible" for the Petitioner.

## ANALYSIS

The Petitioner contends that the trial court erred in denying his petition for post-conviction relief. He argues that he received ineffective assistance of counsel and did not enter a knowing, intelligent, and voluntary guilty plea. The State responds that Petitioner has failed to present evidence supporting his allegations. We agree.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation

encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the Petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

**I. Ineffective Assistance of Counsel.** The Petitioner contends that trial counsel provided ineffective assistance of counsel by failing to fully investigate the case, failing to argue suppression of his statement, failing to introduce the presentence report at the plea hearing, and failing to advise the Petitioner that he could not be convicted of both murder and especially aggravated burglary. The State responds that the Petitioner failed to establish by clear and convincing evidence that counsel's performance was deficient.

In regard to the Petitioner's claim that trial counsel failed to fully investigate the case, the Petitioner alleges counsel failed to fully investigate the trajectory of the bullet, the number of casings at the scene, and how the Petitioner's DNA appeared on his hoodie. He also argues that counsel should have interviewed more witnesses and obtained an affidavit from Mr. Marshall. Further, the Petitioner complains that counsel knew the .45 caliber gun

was used by the Petitioner only through his own admissions, and counsel did not inquire whether the gun was registered to anyone or whether there was a fingerprint analysis of the weapons involved. Thus, the Petitioner contends counsel did not pursue all possible defenses for him and failed "to discuss fully the potential strategies and tactical choices with him."

Upon our review of the post-conviction proceedings, the Petitioner failed to present any evidence regarding counsel's failure to investigate his case. He did not present any witnesses, and without such evidence, the Petitioner cannot show either deficiency of counsel or prejudice therefrom. "When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In addition, "For purposes of proving an ineffective assistance of counsel claim, proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." Owens v. State, 13 S.W. 3d 742, 756 (Tenn. Crim. App. 1999) (affirming denial of post-conviction relief where petitioner "failed to produce any evidence at the post-conviction hearing indicating that an investigator would have discovered any information favorable to her case."). The post-conviction court determined that the Petitioner "failed to establish the factual allegations contained in his petition by clear and convincing evidence." The record supports this determination, and the Petitioner is not entitled to relief on this issue.

Next, the Petitioner contends that trial counsel's performance was deficient because she failed to move to suppress a statement he provided to Investigator Joy. Counsel testified that she focused her argument and moved to suppress the Petitioner's statements to agents of the Tennessee Bureau of Investigation. Here, the Petitioner failed to produce the statement made to Investigator Joy. Accordingly, the State asserts, and we agree, that this argument is waived. See Smith v. State, No. W2010-00305-CCA-R3-PC, 2011 WL 3912811, at *10 (Tenn. Crim. App. Sept. 7, 2011), perm. app. denied (Tenn. Jan. 13, 2012); Walton v. State, No. M2007-02549-CCA-R3-PC, 2008 WL 2648929, at *3 (Tenn. Crim. App. July 2, 2008).

The Petitioner also contends trial counsel was ineffective by failing to present the presentence report to the court at the guilty plea hearing. The Petitioner claims the presentence report would have shown mitigating factors, including his age of nineteen at the time of the offense and his lack of a criminal record. He states he was unaware that counsel waived the report. In response, the State argues that the presentation of mitigating factors would not have affected the Petitioner, because he was entering into an agreed upon sentence.

At the post-conviction hearing, counsel testified that because this was a negotiated plea she did not introduce a presentence report or any mitigating factors to the court. In her negotiations with the State, counsel presented these mitigating factors and sought imposition of concurrent sentences. Counsel believed that it was "just a normal procedure to waive" the presentence report at a guilty plea hearing. Here, we fail to see, and the Petitioner has failed to explain, how the absence of a presentence report at his guilty plea proceedings was prejudicial. The Petitioner is not entitled to relief on this issue.

Finally, the Petitioner contends that trial counsel was ineffective in failing to tell him that he could not be convicted of both second degree murder and especially aggravated burglary under Tennessee Code Annotated, Section 39-14-404(d), because both offenses require evidence of serious bodily injury. In response, the State argues that the Petitioner has failed to establish prejudice because his testimony does not show that knowledge of this legal issue would have influenced his decision to accept the plea offer.

Counsel testified that she discussed this issue with the Petitioner, other attorneys in her office, and the prosecutor before entry of the guilty plea. Counsel specifically told the Petitioner that second degree murder and especially aggravated burglary may be "duplicitous" because each offense included an element of serious bodily injury and a killing. However, "in light of the fact that [the Petitioner] was facing 51 years . . . and that it was a felony murder charge," counsel believed the settlement offer involving both offenses was in the Petitioner's best interest. Additionally, had the case gone to trial and the Petitioner received convictions on both second degree murder and especially aggravated burglary, counsel was prepared to raise the issue on appeal.

In regard to this issue, the Petitioner confirmed that counsel told him that the State could not "charge [him] with especially aggravated robbery and especially aggravated burglary." However, he denied that counsel informed him that he could not be charged with especially aggravated burglary and murder. Throughout his testimony, the Petitioner acknowledged that he was advised of and rejected two previous offers of settlement by the State, neither of which included a guilty plea to the especially aggravated burglary offense. He and counsel were "trying to get [him] a second degree murder plea." The Petitioner knew that upon receiving the third offer to plead guilty to second degree murder and especially aggravated burglary, it was "better" and that his release eligibility date for the especially aggravated burglary would be sooner.

In its written order, the trial court stated:

> [Counsel] discussed the ramifications of T.C.A. [§] 39-14-404(d) with [the Petitioner], but as a way to negotiate a lesser sentence, proceeded with the entry of [the] negotiated plea to second degree murder, especially aggravated burglary and possession of a firearm during the commission of a felony. [Counsel] testified that this was a negotiated plea with the plea intentionally structured so that a portion of the sentence, or more particularly, the especially aggravated burglary[,] could be served at a rate of thirty percent (30%) thereby reducing the actual incarceration time. By utilizing this tactic, [Counsel] was able to structure a settlement which was somewhat less than any previous offers by the State and was also successful in being able to enter the negotiated plea beyond the Court imposed deadline for such negotiated settlements.

We acknowledge that the State's prosecution of the Petitioner for especially aggravated burglary in addition to his prosecution for second degree murder was precluded by Tennessee Code Annotated section 39-14-404(d), which states that "[a]cts which constitute an offense under this section may be prosecuted under this section or any other applicable section, but not both." This statute prohibits use of the same proof to enhance the conviction based upon the element of serious bodily injury. See State v. Larry Darnnell Pinex, No. M2007-01211-CCA-R3-CD, 2008 WL 4853077, at *17 (Tenn. Crim. App. Nov. 6, 2008), perm. app. denied (Tenn. May 11, 2009); State v. Daniel O'Sicky, No. E2010-02439-CCA-R3-CD, 2011 WL 3371486 at *6 (Tenn. Crim. App. 2011). However, upon our review of the record, we are unable to conclude that trial counsel was unreasonable in negotiating the guilty plea in this matter.

First, the record shows extensive plea negotiations in this case. Throughout this process, the Petitioner was informed of the consequences of each offer and chose to focus primarily on reducing the first degree felony murder charge to the lesser included offense of second degree murder. He expressed his desire to only accept an offer to plead guilty to second degree murder. When he received the offer to plead guilty to second degree murder and especially aggravated burglary, counsel discussed the potential violation of section 39-14-404 (d) with the Petitioner. The Petitioner acknowledged that he was receiving a lesser sentence under the plea agreement, and accepted its terms, despite the potential statutory violation. This offer, as explained by trial counsel and the post-conviction court, reduced the

Petitioner's effective sentence by ten years and made him eligible for parole. Finally, the record shows that the Petitioner did not testify at the post-conviction hearing that he would have rejected the State's offer of settlement had he known that he could not be charged with both especially aggravated burglary and second degree murder. See Hill v. Lockhart, 474 U.S. 52, 60 (1985) (requiring the Petitioner to show "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.").

In our view, the Petitioner made a deliberate and strategic choice to enter a guilty plea to second degree murder and especially aggravated burglary. Under these circumstances, we are unable to conclude that counsel's performance was in any way deficient or that the Petitioner suffered any prejudice as a result. The record supports the judgment of the post-conviction court. Accordingly, the Petitioner is not entitled to relief on this issue.

**II. Voluntariness of Plea.** The Petitioner contends that he did not enter a knowing, intelligent, and voluntary plea because he was "low functioning," and this was his first encounter with the criminal justice system. The State contends this issue is without merit.

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242, 89 S. Ct. at 1711. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244, 89 S. Ct. at 1712. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id.

These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984))).

At the guilty plea hearing, the trial court followed the guidelines of Rule 11(b) of Tennessee Rules of Criminal Procedure and thoroughly questioned the Petitioner about the terms of the plea agreement and consequences of his guilty plea. In response, the Petitioner acknowledged that he understood. Counsel addressed the Petitioner's learning disability by reading the plea agreement and other documents to him aloud and explaining terms in more understandable language. At his request, she also allowed his family to participate in their discussions regarding the case. The Petitioner testified at the post-conviction hearing that he accepted the plea because he feared serving fifty-one years if convicted at trial on felony murder. He further acknowledged that he understood the charges, his sentences, and the risks of a trial.

Based on this record, the trial court concluded, and we agree, that the Petitioner entered knowing, intelligent, and voluntary guilty pleas. The Petitioner is not entitled to relief in this matter.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-13-